**LIBERTY AIR, Inc. v. AEROVIAS SUD AMERICANA, Inc., et. al.**
No. 65-L-556.
**REXAIR, Inc. v. AEROVIAS SUD AMERICANA, Inc., et. al.**
No. 65-L-557.
Circuit Court, Dade County.
August 31 and October 25, 1966.

Philip L. Brawner, Miami, for plaintiffs.

Stephen Lubow, Miami, for defendants.

JAMES LAWRENCE KING, Circuit Judge.

*Final decree, August 31, 1966:* The above-captioned consolidated cases came on for final hearing on the complaint, the amended and supplemental complaints and the answer and affirmative defenses filed by the defendant Jack Aldridge. Originally the suits sought relief against the corporate defendant, Aerovias Sud Americana, Inc. and the individual defendant, Jack Aldridge. On April 23, 1965, a notice was filed herein of the entry of a restraining order by the federal district court of the southern district of Florida, Miami division, case no. 65-124, as to the corporate defendant Aerovias Sud Americana, Inc. In accordance with the provisions of said restraining order, this court did not proceed to adjudicate any of the rights, liabilities or responsibilities of the corporate defendant but did, on the 16th, 17th and 18th days of August, 1966, conduct a final hearing on the issues as framed by the pleadings with respect to the individual defendant, Jack Aldridge, and the matters in controversy between said defendant and the plaintiff corporations.

After careful consideration of the testimony of the various witnesses, voluminous exhibits, pleadings, oral argument and briefs of counsel for the respective parties, the court finds as follows —

On July 1, 1964, the plaintiff Liberty Air, Inc. entered into an aircraft lease with the corporate defendant Aerovias Sud Americana, Inc., whereby, for certain considerations and under certain conditions two DC 4 Douglas aircraft (no. N-90445 and no. N-88937) were leased for terms of sixty months to the corporate defendant.

On July 24, 1964, the plaintiff Rexair, Inc. leased a Douglas DC 4 aircraft (no. N-30064) to the corporate defendant for a term of sixty months commencing July 24, 1964. The agreed rental for the two DC 4 aircraft operating under the leases of July 1, 1964 was $3,000 per month plus $6 per operating hour of airframe time used by the aircraft. The agreed rental on the aircraft covered in the lease of July 24, 1964 (no. N-30064) was $75 per hour — according to the lease documents on the testimonies of both parties at the final hearing.

As of January 25, 1965, the corporate defendant was in default in the sum of approximately $26,000 for rentals due Liberty Air and Rexair under the provisions of the leases. An officer and representative of the plaintiff leasing corporations, Mr. George H. Batchelor, met with Mr. Jack Aldridge and Captain Williams (representing Aerovias Sud Americana, Inc.) on January 25, 1965 in Miami for the purpose of discussing the defaulted payments due Liberty Air and Rexair for the lease of the three airplanes. At the time of the meeting Mr. Batchelor advised the representatives of the corporate defendant that unless some agreeable arrangement could be arrived at concerning the sums then due the plaintiff corporations he would cause the three aircraft to be repossessed from Aerovias Sud Americana.

After considerable discussion the parties reached the following agreement which was typed by Captain Williams and signed by the individual defendant Jack Aldridge —

> It is hereby agreed by Mr. Jack Aldridge, principal stockholder of Aereovias Sud Americana, Inc. as follows:
>
> 1. That he will guarantee the payment for ASA in the sum of $1,785 for a replacement engine from California for Mr. Batchelor's airplane, upon or prior to its arrival in Miami, Florida.
>
> 2. That he guarantees that ASA will pay unto Mr. Batchelor the remaining sum of approx. $2,500 due to Mr. Batchelor for bad checks written and issued to Batchelor's firm by the past management, prior to noon, January 13, 1965.
>
> 3. That he will guarantee that ASA pays to Mr. George Batchelor the sums per week of aircraft and engine reserve for aircraft utilized that are owned by said Batchelor, including that pro-rated portion per week of monthly rentals, commencing with noon, January 13th, 1965 until he receives an accurate certified public accountant's resume of the bills and accounts of ASA.
>
> 4. Further that he does not commit himself to any other stipulations with regards to the existing contracts until a further date, but the intent of this guarantee to Batchelor is to satisfy Batchelor that Aldridge will accept and cause to be paid unto Batchelor funds that became the new responsibility of ASA on January 13, 1965.

5. Reference to Mr. Batchelor refers to the ASA or Aldridge responsibility to Batchelor as president of Liberty Air, Inc. and International Aerodyne and/or Rexair, Inc.

6. It is further agreed that ASA will replace the engines and return N-90445 to flight status within ten days from date, and that the remaining hours to be flown on one R-2000 engine placed on N-30064 from another unleased plane known as 060 will be paid.

7. By making this guarantee, Mr. Aldridge does not include nor infer the acceptance on his part of any responsibility whatsoever on his part or the part of Aerovias Sud Americana, Inc. as to the legality or responsibilities of any previous act or contract entered into by the past management or any of its officers prior to Jan. 13, 1965.

At 3 A.M. on the morning of February 5, 1965, the plaintiff corporations physically repossessed DC 4 aircraft number N-30064.

The plaintiff corporations seek to impose personal liability on the defendant Jack Aldridge under the document dated January 25, 1965, upon the theory that he is a guarantor of sums owed by Aerovias Sud Americana, Inc., to the two plaintiff corporations in consideration of their forbearance to repossess the three leased aircraft.

The defense, on behalf of the defendant Jack Aldridge, asserts affirmatively lack of consideration, insufficient consideration, failure of consideration, fraud and misrepresentation, setoff, release, prevention of performance, lack of acceptance, lack of notice and lack of indebtedness.

The principal thrust of the defense argument is that — (a) there was no consideration to either Jack Aldridge or Aerovias Sud Americana for the execution of his "guaranty" on January 25, 1965, and it must therefore be declared an invalid instrument, and (b) if there was consideration by virtue of the benefit flowing to Aerovias Sud Americana upon the plaintiff corporation's failure to exercise their right to immediate repossession of the three aircraft on January 25, 1965, then that consideration failed ten days later when the plaintiff corporations repudiated their agreed forbearance to repossess and did, in fact, repossess one DC 4.

The plaintiff corporations argue that there were valid and binding considerations for the execution of the contract of guaranty in that they did not exercise their right to immediate possession of the aircraft on January 25, 1965.

When a guaranty agreement covers future advances as well as the existing indebtednesses, no separate consideration is required to support the promise of the guarantor. It is stated in

Gibbs v. American National Bank of Jacksonville (Fla. App. 1963), 155 So.2d 651, at page 655 —

> "Appellant argues that there was no lawful consideration for the agreement in suit. He relies on the general rule that where the contract of guaranty is entered into independent of the transaction which created the original or present debt or obligation, the guarantor's promise must be supported by a consideration distinct from that of the present debt; that a consideration is not found in a mere naked promise to pay the existing debt of another (24 Am. Jur., p. 906, Guaranty, §50), and that a mere forbearance by a creditor, without any agreement on his part to forbear, is not deemed to be a sufficient consideration for a guaranty by a third person (24 Am. Jur., p. 908, Guaranty, §52). These principles do not apply to the agreement in suit because it covers future advances as well as existing indebtedness . . ."

The court is of the view that the plaintiff's action in repossessing the one DC 4 did not amount to a failure of consideration. While it is true that a ten day period is a short period of "forbearance" on the part of plaintiff corporations, it is also true that neither the defendant corporation Aerovias Sud Americana nor the defendant Jack Aldridge were complying with the agreement of January 25, 1965 by maintaining the payments due under paragraph three thereof. This paragraph deals with payments for actual aircraft use and were payable on a daily basis to the plaintiff corporations. Because the payments were not made the plaintiff corporations had the right to repossess the aircraft — and they did not, by so doing, cause the consideration for the guaranty to fail.

Having ascertained that the document of January 25, 1965 is a binding and valid contract of guaranty for which Mr. Aldridge can be held personally liable for his undertakings therein, we must turn to the document itself to ascertain the precise limits of his liability.

With respect to paragraph one of the guaranty contract, it is the finding of the court that the replacement engine for which Mr. Aldridge agreed to pay $1,785 freight charges never arrived in Miami, or if it did arrive in Miami, Aerovias Sud Americana was never notified of its arrival, therefore Mr. Aldridge is not liable under his guaranty for said sum.

Under paragraph two of the guaranty agreement Mr. Aldridge agreed to reimburse Mr. Batchelor and the plaintiff corporations for certain bad checks, issued to the plaintiffs by prior manage-

ments of Aerovias Sud Americana, in the approximate amount of $2,500. The court finds that there were six such checks. On January 22, 1965, Aerovias Sud Americana issued check number 1637 in the amount of $2,139.50 covering previously issued checks numbered 1543, 1544 and 1545, which have been returned with the notation there were insufficient funds to cover said checks. On January 23, 1965, Aerovias Sud Americana issued check number 1653 in the amount of $2,875.30 covering checks number 1546, 1548 and 1549, which had previously been returned to the corporation for insufficient funds. The plaintiffs contend that check number 1547 in the amount of $549.80 was a "bad check" for which Mr. Aldridge is liable under the provisions of paragraph two of the guaranty agreement but the court finds that said check was never presented for payment to Aerovias Sud Americana and therefore the defendant Aldridge has no personal liability for the check.

With respect to paragraph three of the agreement the court finds that Mr. Aldridge guaranteed the sums due the plaintiff corporations for aircraft rentals — "including that pro-rated portion per week of monthly rentals commencing with noon, January 13, 1965 . . .". The testimony reflects, and the court so finds, that with respect to aircraft number N-88937, said aircraft was flown (between January 14 and April 2, 1965) 353 hours and 51 minutes for a total rental cost of $2,118 plus the sum of $3,000 per month from January 13, 1965 to the termination date of the lease.

With respect to aircraft numbered N-30064 the court finds that said aircraft was flown by Aerovias Sud Americana a total of 88 hours and 38 minutes between January 14 and January 31, 1965, resulting in rental due the plaintiff corporations in the sum of $6,700. The defendant Aldridge is obligated for this sum less the setoff of amounts paid as discussed hereafter in this opinion. On this aircraft there was no monthly charge and the limit of Aldridge's liability is the total sum of $6,700, representing flying and airframe time on the aircraft. This is the aircraft that was repossessed on February 5, 1965.

With respect to aircraft number N-90445, Mr. Aldridge is obligated under the terms of the guaranty for the payment of the basic $3,000 per month charge from January 13, 1965 to the expiration of the lease. This is the aircraft which was not flown during this period of time as the result of the removal of its engines.

Paragraphs 4, 5 and 6 of the contract of guaranty dated January 25, 1965 are self explanatory and impose no financial responsibility upon Mr. Aldridge. In paragraph 6 Aldridge agreed — ". . . that ASA will replace the engines and return N-90445 to flight status within ten days from date, . . .". It is clear that the parties contemplated that Aerovias Sud Americana would replace the missing engines on aircraft N-90445 and that Aldridge undertook no personal guaranty respecting the replacement of said engines. It is therefore the finding of this court that the defendant Aldridge is not individually liable or responsible for the estimated $20,000 per engine replacement cost for the five missing engines.

It is the opinion of the court that the defendant Aldridge did not guarantee the payment of attorney's fees to the attorney for the plaintiff corporations by his execution of January 25, 1965. The plaintiffs will have to seek the payment of said fees from the corporate defendant at such time as they seek an adjudication of their rights with respect to the responsibilities of the corporate defendant to the plaintiff corporations under the terms of the leases above referred to. The court further finds that the following sums were paid by Aerovias Sud Americana to the corporate plaintiffs on the dates indicated in payment of rental due on the three aircraft leased —

| | |
|---|---|
| January 19, 1965 | $5,000.00 |
| January 26, 1965 | 1,995.00 |
| January 26, 1965 | 1,819.20 |
| January 28, 1965 | 495.00 |
| Total | $9,309.20 |

The defendant Aldridge is entitled to a setoff of $9,309.20 against the sums herein found by this court to be due and owing to the corporate plaintiffs.

It is therefore ordered, adjudged and decreed — (1) That the agreement executed by the defendant Aldridge on January 25, 1965 is a valid and binding contract of guaranty, upon which he is personally liable for the sums of money indicated in the foregoing opinion. (2) That the court retains jurisdiction of this cause for the entry of an appropriate judgment for damages against the defendant Aldridge and in favor of the corporate plaintiffs for the sums of money found by the court to be due the corporate plaintiffs under the contract of guaranty dated Jan-

uary 26, 1965 and for such court costs as may be subsequently taxed against the defendant Aldridge upon appropriate motion.

*Final judgment, October 25, 1966:* On August 31, 1966 the court entered a final decree finding that the defendant Aldridge is indebted to the plaintiff Rexair, Inc. for the guaranteed portion of the rent due on Douglas DC 4 aircraft N-30064 in the sum of $6,700, and that the defendant Aldridge is indebted to the plaintiff Liberty Air, Inc. for the guaranteed portion of the rent due on two Douglas DC 4 aircraft N-99037 and N-90445 in the sum of $323,601.86 less payments credited to his obligation in the sum of $9,309.20, and providing that a judgment should be entered for the sums due and the costs to be taxed.

On October 17, 1966 the court heard the plaintiffs' motion to tax costs and found that costs should be taxed against the defendant Aldridge in the sum of $104.45.

It is therefore ordered and adjudged that judgment is hereby entered in favor of the plaintiff Rexair, Inc. and against the defendant, Jack Aldridge, and that the plaintiff Rexair, Inc. do have and recover of and from the defendant Jack Aldridge the sum of $6,700 plus costs in the amount of $52.20, for all of which let execution issue.

It is further ordered and adjudged that judgment is hereby entered in favor of the plaintiff Liberty Air, Inc. and against the defendant Jack Aldridge, and that the plaintiff Liberty Air, Inc. do have and recover of and from the defendant Jack Aldridge the sum of $314,292.66, plus costs in the amount of $52.25, for all of which let execution issue.